UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-23731-CV-GAYLES
MAGISTRATE JUDGE REID

JOSEPH BRADLEY,

      Petitioner,

v.

MARK S. INCH,[1]

      Respondent.

_____/

## REPORT OF MAGISTRATE JUDGE
## RECOMMENDING DISMISSAL AS TIME-BARRED
## STATE HABEAS PETITION - 28 U.S.C. § 2254

### I. Introduction

Petitioner, **Joseph Bradley,** has filed a *pro se* petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his convictions and sentences for aggravated assault with a deadly weapon and felon in a possession of a firearm, entered following a jury verdict in **Martin County Circuit Court, Case No. 432006CF000853A.**

Petitioner claims this federal petition is timely filed because state post-conviction proceedings tolled the expiration of the limitations period. [ECF No. 17,

---

[1]Pursuant to Fed. R. Civ. P. 25(d), since Mark S. Inch has replaced Julie Jones as the Secretary of the Florida Department of Corrections, he is substituted as the proper respondent in this case.

at 1-3]. Petitioner alternatively appears to argue that the failure to review the merits of the claim would result in a fundamental miscarriage of justice because "it will result in the continued incarceration of an individual who *might* be actually innocent of the crimes for which he has been convicted." [ECF No. 8 at 14] (emphasis added). His arguments are legally incorrect. For the reasons explained in this Report, this federal habeas petition should be dismissed as time-barred.

This cause has been referred to the undersigned for consideration and report, pursuant to 28 U.S.C. § 636(b)(1)(B), (C); S.D. Fla. Admin. Order 2019-02; and, the Rules Governing 2254 Habeas Corpus Petitions in the United States District Courts.

The court has reviewed the amended petition [ECF No. 8] together with the State's response [ECF No. 14] with supporting exhibits [ECF Nos. 15, 16], and Petitioner's replies [ECF Nos. 17, 21].

## II. Claims

Construing the arguments liberally as afforded *pro se* litigants, pursuant to *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), Petitioner raises twelve grounds for relief, as follows:

1.  Trial counsel was ineffective for failing to investigate, interview, and subpoena character witnesses to testify on Petitioner's behalf at trial. [ECF No. 8 at 5].

2.  Trial counsel was ineffective for refusing to allow Petitioner to testify on his own behalf at trial. [ECF No. 8 at 7].

3.  Trial counsel was ineffective for failing to request a jury instruction on abandonment. [ECF No. 8 at 8].

4.     The trial court lacked jurisdiction to proceed to trial before a ruling was entered on Petitioner's petition for writ of prohibition. [ECF No. 8 at 10].

5.     Fundamental error occurred as a result of the State's failure to comply with Fla. R. Crim. P. 3.190(j)(3). [ECF No. 8 at 16].

6.     The trial court's ruling on the issue of counsel's "opening the door," which then became the law of the case resulted in manifest injustice. [ECF No. 8 at 16].

7.     The trial court abused its discretion by re-joining severed offenses. [ECF No. 8 at 16].

8.     Petitioner's due process rights were violated when Detective Obermeyer was permitted to present opinion testimony. [ECF No. 8 at 17].

9.     Trial counsel's ineffectiveness and the overall cumulative errors and omissions warrant vacatur of his convictions. [ECF No. 8 at 17].

10.    Petitioner's due process rights were violated by the prosecutor's misconduct. [ECF 8 at 18].

11.    Petitioner's appellate counsel was ineffective. [ECF 8 at 18].

12.    Petitioner's sentence is illegal as a matter of law. [ECF 8 at 19].

### III. Statutory Tolling Under 28 U.S.C. § 2244(d)(1)(A)-(D)

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *See Wilcox v. Fla. Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998) (per curiam). The AEDPA imposed for the first time a one-year statute of limitations on petitions for writ of habeas corpus filed by state prisoners. *See* 28 U.S.C. § 2244(d)(1)("A 1-year period of limitation shall apply to an application for a writ

of habeas corpus.. . .".). Specifically, the AEDPA provides that the limitations period

shall run from the latest of—

> (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such action;

> (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*See* 28 U.S.C. § 2244(d)(1)(A)-(D).

The limitations period is tolled, however, for "[t]he time during which a

properly filed application for post-conviction or other collateral review with respect

to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).

Consequently, this petition is time-barred, pursuant to 28 U.S.C. § 2244(d)(1)(A),

unless the appropriate limitations period was extended by properly filed applications

for state post-conviction or other collateral review proceedings. *See* 28 U.S.C.

§ 2244(d)(2); *Rich v. Sec'y for Dep't of Corr.,* 512 F. App'x 981, 982-83 (11th Cir.

2013). Further, if Petitioner created any time gaps in the review process, the one-

year clock would continue to run. *Kearse v. Sec'y, Fla. Dep't of Corr.*, 736 F.3d 1359, 1362 (11th Cir. 2013).

### IV. Procedural History and Statutory Tolling

Petitioner was charged with and found guilty of aggravated assault with a deadly weapon, in violation of Fla. Stat. § 784.021(1)(a) (Count 1) and felon in possession of a firearm, in violation of Fla. Stat. § 790.23 (Count 2). [ECF No. 15-1, Exs. 1; 2]. He was adjudicated guilty and sentenced to a total term of 10 years of imprisonment on Count 1 and 30 years of imprisonment as to Count 2. [*Id.,* Ex. 3]. After being granted a belated direct appeal, the Fourth District Court of Appeal *per curiam* affirmed Petitioner's convictions and sentences in a decision without written opinion. *Bradley v. State,* 29 So. 3d 1132 (Fla. 4th DCA 2010)(unpublished table decision); [*Id.,* Ex. 8]. Rehearing was denied on **April 6, 2010.** [*Id.,* Ex. 10]. No petition for certiorari review appears to have been filed.

In any event, Petitioner was not permitted to seek discretionary review with the Florida Supreme Court because the affirmance on direct appeal did not cite to any decision for which the Florida Supreme Court had accepted review. *See Wells v. State*, 132 So.3d 1110, 1113 (Fla. 2014). Therefore, Petitioner's conviction became final, and the federal limitations period, under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), as amended, began on **July 5, 2010,** ninety days after the state appellate court issued its order affirming the judgment of conviction, when the period for seeking discretionary review with the

Supreme Court of the United States expired. *See* Sup. Ct. R. 13; *Gonzalez v. Thaler,* 565 U.S. 134 (2012); *Chamblee v. Fla.,* 905 F.3d 1192, 1198 n. 11 (11th Cir. 2018). Applying the finality trigger of § 2244(d)(1)(A), the federal statute of limitations commenced on **July 5, 2010.**

Petitioner had one year from the time his convictions became final on **July 5, 2010** or until **July 5, 2011,** to timely file his § 2254 petition. *See Downs v. McNeil,* 520 F.3d 1311, 1318 (11th Cir. 2008). But the one-year limitations period is statutorily tolled during times when a "properly filed" application for post-conviction relief is pending in the state forum. *See* 28 U.S.C. § 2244(d)(2). An application is properly filed if its delivery and acceptance comply with applicable laws and rules governing such filings. *Artuz v. Bennett,* 531 U.S. 4, 8 (2000).

The limitations period ran unchecked for **39 days,** from the time Petitioner's conviction became final on **July 5, 2010** until he filed his first motion for post-conviction relief, pursuant to Fla. R. Crim. P. 3.850, on **August 13, 2010.** [ECF No. 15-1, Ex. 14, p. 94]. The trial court entered a detailed order dismissing the motion in its entirety, without prejudice to filing a "comprehensive, legally and facially sufficient amended motion, under oath, if any amended claims can be made in good faith," pursuant to *Spera v. State,* 971 So. 2d 754 (Fla. 2007).[2] [ECF No. 15-

---

[2]In *Spera,* the Florida Supreme Court held that a trial court abuses its discretion when it fails to allow a defendant one opportunity to amend a facially insufficient motion for postconviction relief, if a petitioner can do so in good faith. *Spera v. State,* 971 So. 2d at 761-62. The Florida Supreme Court also ruled that proper procedure would require the court to strike the insufficient motion, but grant leave to amend within a "reasonable period," stating it did not

1, Ex. 15]. Pursuant to Fla. R. Crim. P. 3.850, since the order was non-final and non-appealable, Petitioner had no right under Florida law to take an appeal. *See Wrencher v. State,* 283 So. 3d 814, 816 (Fla. 4th DCA 2018)(finding non-final order dismissing last amended Rule 3.850 motion without prejudice was not appealable); *Kelly v. State,* 969 So. 2d 1159 (Fla. 4 DCA 2007)("dismissal of a Rule 3.850 motion with leave to amend is non-final and non-appealable").

After being denied leave to exceed the page limits for filing an amended Rule 3.850 motion, Petitioner filed his amended motion on November 14, 2011. [ECF No. 15-1, Ex. 25]. On November 30, 2011, he filed a second amended Rule 3.850 motion. [*Id.,* Ex. 26]. Another non-final and non-appealable order was entered on January 6, 2012, dismissing the motions in their entirety without prejudice to refiling "a comprehensive sufficiently pled 50 page or less motion. . ." [*Id.,* Ex. 27].

Petitioner attempted to cure the deficiencies, filing another Rule 3.850 motion on January 13, 2012. [*Id.*, Ex. 28]. On February 21, 2012, the trial court entered yet another non-final and non-appealable order dismissing this latest motion in its entirety without prejudice to refiling "a comprehensive sufficiently pled motion on or before April 16, 2012." [*Id.*, Ex. 29]. The trial court also denied Petitioner's request for appointment of counsel in light of the dismissal of his Rule 3.850 motion. [*Id.*].

---

"envision that window of opportunity would exceed thirty days and may be less." *Spera v. State,* 974 So. 2d at 761.

On April 16, 2012, Petitioner filed another second amended Rule 3.850 motion. [*Id.*, Ex. 30]. On August 22, 2012, the state filed a response to the motion. [*Id.*, Ex. 33]. Petitioner filed a reply on September 7, 2012. [*Id.*, Ex. 34 at 1]. On June 13, 2013, the trial court entered a detailed, final appealable order denying this latest Rule 3.850 motion on the merits. [*Id.*, Ex. 35]. Petitioner's motions for rehearing were denied by order entered on August 13, 2013. [*Id.*, Ex. 39]. The Petitioner appealed the denial of his Rule 3.850 motion which proceeded under Fourth District Court of Appeal, Case No. 4D13-3139. [*Id.,* Ex. 42].

On November 12, 2014, the Fourth District Court of Appeal affirmed in part and reversed in part, remanding the case to the trial court to address Petitioner's claim whether trial counsel was ineffective in opening the door to the victim's testimony regarding prior bad acts. *See Bradley v. State,* 152 So. 3d 667 (Fla. 4th DCA 2014); [*Id.,* Ex. 47]. Rehearing was denied, and the appeal concluded with the issuance of the mandate on January 16, 2015. [*Id.,* Exs. 49-50]. Petitioner's request for discretionary review with the Florida Supreme Court was denied on October 29, 2015. *See Bradley v. State,* 182 So. 3d 630 (Fla. 2015); [*Id.,* Ex. 55].

Following the appellate court's mandate, the trial court entered an order requiring a response from the state regarding the issue on remand. [*Id.,* Ex. 61]. On April 13, 2015, after receipt of the state's response, the trial court entered an order denying the remanded issue on the merits. [*Id.*, Exs. 62, 63]. On **October 15, 2015,** the Fourth District Court of Appeal *per curiam* affirmed the trial court's denial of

the remaining claim in a decision without written opinion. *See Bradley v. State,* 178 So. 3d 414 (Fla. 4th DCA 2015)(unpublished table decision); [*Id.,* Ex. 68]. Rehearing was denied and the appeal concluded with the issuance of the mandate on **January 5, 2016.**[3] [*Id.,* Exs. 70-71].

It is worth noting, at this juncture, that the filing of the 2012 post-conviction motion relates back to the filing of the defective 2010 motion which was dismissed, without prejudice, thereby tolling the AEDPA's one-year limitations period until the appeal of the trial court's order following remand was concluded in **2016.** *See Green v. Sec'y, Dep't of Corr.,* 877 F.3d 1244, 1248 (11th Cir. 2017)(recognizing "under Florida law when a postconviction motion is stricken with leave to amend, the amended motion relates back to the date of the original filing.")(citing *Bryant v. State,* 901 So. 2d 810, 818 (Fla. 2005)). Consequently, the AEDPA limitations period was tolled from **2010** until conclusion of the above appeal on **January 5, 2016.**

The federal limitations clock began anew, running un-tolled for **195 days**, from the **January 5, 2016** mandate until **July 19, 2016,** when Petitioner returned to the trial court, filing a motion to dismiss/vacate or correct illegal sentence. [ECF 15-1, Ex. 72]. On August 26, 2016, the trial court entered a detailed order denying the motion, finding it did not comply with Fla. R. Crim. P. 3.800, and was "an abuse of

---

[3]There were other post-convictions instituted between 2010 and 2016, but they all concluded before 2016, therefore, they need not be detailed here as they have no impact on the limitations period.

the process," because Petitioner had filed "numerous motions seeking relief from his judgment and sentence," and had been previously "warned regarding his meritless and frivolous filings," but "disregarded these admonitions." [*Id.,* Ex. 73, pp. 2-3]. The court determined "enough is enough," and ordered Petitioner to show cause why sanctions should not be imposed, pursuant to Fla. R. Crim. P. 3.850(n)(4). [*Id.,* Ex. 73 at 3-4]. The trial court's denial was *per curiam* affirmed on appeal in a decision without written opinion. *See Bradley v. State,* 229 So. 3d 350 (Fla. 4th DCA 2016)(unpublished table decision), [*Id.,* Ex. 68]. Rehearing was denied, and the appeal concluded with the issuance of the mandate on **February 17, 2017.** [*Id.,* Exs. 70, 71].

Petitioner filed a notice seeking discretionary review with the Florida Supreme Court, which was dismissed for lack of jurisdiction on March 8, 2017. *See Bradley v. State,* No. SC17-385, 2017 WL 914689, *1 (Fla. Mar. 8, 2017); [*Id.,* Exs. 79, 80]. In so ruling, the Florida Supreme Court stated where, as here, a decision from a district court of appeal is issued without opinion or explanation, no jurisdiction lies to review the lower court's decision. *See Bradley v. State,* No. SC17-385, 2017 WL 914689 at *1 (citations omitted); [*Id.*]. Pursuant to Fla. R. Crim. P. 9.030(a)(2), Petitioner could not seek discretionary review of the appellate court's *per curiam* order. *See Chamblee v. Fla.,* 905 F.3d at 1198 (citing *Herring v. Sec'y, Dep't of Corr.,* 397 F.3d 1338, 1355 (11th Cir. 2005) ("State courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such

matters." (quoting *Agan v. Vaughn,* 119 F.3d 1538, 1549 (11th Cir. 1997))).

Because, this was not a properly filed application, as it did not comply with the

applicable law and rules governing such filings, Petitioner's notice to invoke the

Florida Supreme Court's jurisdiction did not serve to stop the federal limitations

period. *See Artuz v. Bennett,* 531 U.S. 4, 8-9 (2000); *Delguidice v. Fla., Dep't of

Corr.,* 351 F. App'x 425, 427 (11th Cir. 2009). Thus, the limitations clock began

again on **February 17, 2017** when the mandate issued at conclusion of the Rule

3.800 appeal.

While the above was pending, Petitioner filed a response to the court's show

cause order, arguing he should not be prohibited from filing future *pro se* motions.

[*Id.,* Ex. 81]. Thereafter, the trial court entered an order, pursuant to Fla. R. Crim. P.

3.850(n), prohibiting Petitioner from filing any further *pro se* pleadings. [*Id.,* Ex. 85

at 1598-99].[4] The sanction order was subsequently *per curiam* affirmed on appeal in

a decision without written opinion. *See Bradley v. State,* 237 So. 3d 1000 (Fla. 4th

DCA Nov. 30, 2017)(unpublished table decision), [*Id.,* Ex. 87].

That same day, the Fourth District Court of Appeal also entered an order

requiring Petitioner to show cause why he should not be prohibited from any further

*pro se* filings before that court. [*Id.*, Ex.88]. The appellate court noted Petitioner had

filed more than forty cases in the appellate court, raising "the same, repetitious,

---

[4]These page numbers are those imprinted by the court's electronic docketing system,
CM/ECF, as noted on the upper, right-hand corner of the filing.

frivolous post-conviction challenges to his conviction and sentence, "for which the court had already issued at least two *Spencer*[5] Orders and a warning against frivolous filings." [*Id.*]. The court noted that the current appeal arose from a trial court order barring Petitioner from further *pro se* filings in the trial court, yet Petitioner raised issues in the appeal which did not address that order, but rather raised "issues which have already been decided and are *res judicata.*" [*Id.*]. The appellate court found Petitioner's appellate filings to be excessive and also an "abuse of process," interfering with the court's "ability to consider legitimate claims." [*Id.*]. Following Petitioner's response, the appellate court entered an Order on January 19, 2018, finding sanctions were "appropriate," and directed the Clerk "to no longer accept any paper filed by Joseph Bradley unless the document has been reviewed and signed by a member in good standing of the Florida bar who certifies that a good faith basis exists for each claim presented." [*Id.,* Ex. 90]. The appellate court further ordered that a copy of the court's order be sent to the appropriate institution for consideration of disciplinary procedures pursuant to Fla. Stat. § 944.279(1) (2017). [*Id.*].

As is clear from the foregoing, the above proceeding also did not serve to toll the federal one-year limitations period because it did not constitute an "application for State post-conviction or other collateral review under § 2244(d)(2)." *See Hall v. Sec'y, Dep't of Corr.*, 921 F.3d 983, 986-87 (11th Cir. 2019). In *Hall*, the Eleventh

---

[5]*State v. Spencer,* 751 So. 2d 47 (Fla. 1999); *see also* Fla. Stat. § 944.279(1) (2014).

Circuit reiterated that the type of applications which toll the limitations period include: "(1) a motion for postconviction relief filed pursuant to Rule 3.850, *See Day v. Crosby,* 391 F.3d 1192, 1192-93 (11th Cir. 2004)(per curiam); (2) a motion to correct an illegal sentence filed pursuant to Rule 3.800(a), *Ford v. Moore,* 296 F.3d 1035, 1036, 1040 (11th Cir. 2002)(per curiam); and (3) a motion for rehearing on the denial of a motion to correct an illegal sentence, *Nix v. Sec'y, Dep't of Corr.,* 393 F.3d 1235, 1237 (11th Cir. 2004)(per curiam)." *See Hall,* 921 F.3d at 987. The Eleventh Circuit further held that "[A]ny appeals filed in a state court from the denial of these motions also qualify as 'application[s] for State post-conviction or other collateral review.' *See Ford,* 296 F.3d at 1040." *Hall,* 921 F.3d at 987. Because this was not an appeal of a post-conviction motion or request for other collateral review, it did not serve to stop the federal limitations clock which continued to run since **February 17, 2017** when the mandate issued concluding the appeal of the denial of his last motion to vacate.

From **February 17, 2017,** the limitations clocked ran unchecked for **214 days** until Petitioner then came to this court, filing his initial federal habeas petition on **September 19, 2017,** under the mailbox rule, when he signed and handed it to prison authorities for mailing, as evidenced by the prison facility stamp.[6] [ECF 1 at 1]. He

---

[6]Absent evidence to the contrary, in accordance with the prison mailbox rule, a *pro se* prisoner's filing is deemed filed on the date it is delivered to prison authorities for mailing. *Washington v. United States,* 243 F.3d 1299, 1301 (11th Cir. 2001); Fed. R. App. 4(c)(1).

filed an amended habeas petition on **November 14, 2017**, which raised additional claims which do not relate back to the September 19, 2017 filing.

Given the procedural history above, a total of **448 days [39 + 195 + 214]** of un-tolled time elapsed from the time Petitioner's conviction became final until he filed his initial federal habeas petition. As a result, this petition should be dismissed as time-barred under § 2244(d)(1)(A). *See Carlisle v. United States,* 517 U.S. 416, 430 (1996)("A filing deadline cannot be complied with, substantially or otherwise by filing late--even one day."). This is so because "the notion that a filing deadline can be complied with by filing something after the deadline falls due is . . . a notion without principle. If 1-day filings are acceptable, 10-day late filings might be equally acceptable, and so on in a cascade of exceptions that would engulf the rule erected by the filing deadline. . . ." *See United States v. Locke,* 471 U.S. 84, 101 (1985).

Further, § 2244(d)(1)(B) and (C) is not applicable here. The Petitioner has not alleged, nor does the record support a finding, that there was a state impediment that should restart the limitations period under § 2244(d)(1)(B). The Petitioner also does not claim, and this record does not reveal, that he is entitled to relief based on a Supreme Court decision, made retroactively applicable to cases on collateral review under § 2244(d)(1)(C).

To the extent he means to argue that the Supreme Court's decision in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012) should serve to excuse the untimeliness of this petition, such an argument warrants no relief. The Eleventh Circuit has made clear

that the *Martinez* decision has no application to the operation or tolling of the § 2244(d) statute of limitations. *See Arthur v. Thomas,* 739 F.3d 611, 620 (11th Cir. 2014); *Chavez,* 742 F.3d at 945-46 (finding *Martinez* did not announce a new constitutional rule, but an equitable principle, finding that nothing in *Martinez* provides a basis for equitable tolling of the filing deadline). Therefore, statutory tolling is not warranted under either §§ 2244(d)(1)(B) or (C).

Finally, § 2244(d)(1)(D) is also inapplicable because Petitioner has not suggested, nor does the state court record reveal, that the statute of limitations should be tolled on the basis of "new evidence" that would sufficiently restart the limitations period based upon "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Nothing of record suggests that the Petitioner's claims are based on newly discovered evidence. Therefore, statutory tolling on this basis is not warranted.

### V. Equitable Tolling Re Statute of Limitations

Furthermore, Petitioner has not alleged, and the record does not support a finding, that he is entitled to the rare and exceptional circumstance of equitable tolling.

"'[E]quitable tolling is an extraordinary remedy [that] is limited to rare and exceptional circumstances and typically applied sparingly.'" *Lanier v. United States,* 769 F. App'x 847, 850 (11th Cir. 2019)(per curiam)(quoting *Hunter v. Ferrell,* 587 F.3d 1304, 1308 (11th Cir. 2009)). To be entitled to equitable tolling, Petitioner must

- 15 -

demonstrate that (1) "'he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Lanier,* 769 F. App'x at 850 (quoting *Holland v. Florida,* 560 U.S. 631, 649 (2010)). Petitioner bears the burden of establishing entitlement to equitable tolling. *See Lanier,* 769 F. App'x at 850 (citing *Outler v. United States,* 485 F.3d 1273, 1280 (11th Cir. 2007)).

Extraordinary circumstances must be beyond a petitioner's control. *See Hunter v. Ferrell*, 587 F.3d 1304, 1308 (11th Cir. 2009). Moreover, there must be a causal connection between the alleged extraordinary circumstances and the late filing of the petition. *See San Martin v. McNeil*, 633 F.3d 1257, 1267 (11th Cir. 2011). However, the diligence required for equitable tolling is "reasonable diligence not maximum feasible diligence." *Id.* (quotation omitted).

Although Petitioner was a proactive litigant proactively prosecuting his direct appeal and his post-conviction proceedings, he has not established any fact to support a finding that he is "entitled to the rare and extraordinary remedy of equitable tolling." *See Holland v. Florida,* 560 U.S. 631, 649 (2010)(quoting *Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005)) This Court is not unmindful that Petitioner pursued collateral relief in the state forum. However, it is evident that there was well over one year of un-tolled time during which no properly filed post-conviction proceedings were pending which would act to toll the federal limitations period. Because Petitioner failed to properly and diligently pursue his rights, he has failed

to demonstrate that he qualifies for equitable tolling of the limitations period. *See Webster v. Moore,* 199 F.3d 1256, 1258-60 (11th Cir. 2000) (holding that even properly filed state court petitions must be pending in order to toll the limitations period).

The time-bar is ultimately the result of Petitioner's failure to timely and properly pursue state post-conviction proceedings and then this federal habeas corpus proceeding. Since this habeas corpus proceeding is untimely, Petitioner's claim challenging the lawfulness of his judgment is now time-barred pursuant to 28 U.S.C. § 2244(d)(1)-(2).

### VI. Fundamental Miscarriage of Justice/Actual Innocence

Petitioner has also not demonstrated that a failure to review this § 2254 petition on the merits will result in a fundamental miscarriage of justice. *See Henderson v. Campbell,* 353 F.3d 880, 882 (11th Cir. 2003). This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson v. Campbell*, 353 F.3d at 892. It is now well settled that "actual innocence," may serve as a gateway through which a petitioner may pass to overcome the AEDPA's procedural bar impediment caused by an untimely filing. *See McQuiggin v. Perkins*, 569 U.S. 383, 401 (2013); *San Martin v. McNeil,* 633 F.3d 1257, 1267-68 (11th Cir. 2011). Petitioner has not demonstrated that he is actually innocent of the convictions. Petitioner has also not presented evidence to undermine the court's confidence in the

outcome of Petitioner's criminal proceedings. *See Milton v. Sec'y, Dep't of Corr's,* 347 F. App'x 528, 531-32 (11th Cir. 2009).

Briefly, given the facts adduced at trial, Petitioner cannot demonstrate that a fundamental miscarriage of justice will result from barring this federal petition. The evidence at trial supports his convictions for aggravated assault with a deadly weapon and felon in possession of a firearm. At trial, it was established that Petitioner lived with Shawn Yates ("Yates") in her Port Salerno home. [ECF No. 16-2, T. 249-50]. On June 5, 2006, Yates obtained a restraining order against Petitioner. [*Id.,* T. 251-52, 268-69]. When she returned home from the courthouse, she observed Petitioner exiting her house, carrying a black machine gun in his hand, and asked him to return her house keys. [*Id.,* T. 252-53, 271, 273]. Petitioner responded by threatening to kill Yates, and then rode away on his bicycle. [*Id.,* T. 271]. Fearing he would return, Yates called the police, as she followed Petitioner in her car. [*Id.* T. 255]. Once Petitioner noticed she was following him, he loaded the gun, and then pointed it at Yates. [*Id.,* T. 255, 258-59, 278]. Eventually, Yates lost sight of Petitioner when he approached the passenger side of a blue van on Driftwood Street. [*Id.,* T. 259-62, 288-89].

Yates also recalled that, a few days earlier, she was awakened in the middle of the night by Petitioner, who was sitting on top of her, punching her in the head. [*Id.,* T. 317]. That evening, Petitioner told Yates and her son to get out of the house

because he intended to burn it to the ground. [*Id.,* T. 318]. At the time, Yates subsequently discovered a window frame was on fire. [*Id.*].

The van driver, Ronald Thomas ("Thomas"), knew Petitioner for many years. [*Id.,* T. 336-42, 354]. As Petitioner approached Thomas, he put the gun through the driver's side window, placing it on the passenger seat, but almost immediately wanted it back so he could kill his "old lady." [*Id.,* T. 342-44]. Thomas, however, did not return the gun, discarding it in a recycling bin. [*Id.,* T. 344]. Because he feared getting into trouble, Thomas did not tell police where they could find the gun. [*Id.,* T. 347]. However, Thomas' brother did tell the police where to find the gun, and after it was located, Yates identified the gun as the one Petitioner had pointed at her. [*Id.,* T. 265-67, 347, 398-96, 401, 429-30]. A short while later, Petitioner was found, drenched in sweat, in Thomas' brother's shed. [*Id.,* T. 348-49, 405, 407, 456-59]. Later on, Thomas informed police regarding his involvement with the gun. [*Id.,* T. 349-50, 453]. Thomas' left palm print was found on the right side of the gun, near the magazine. [*Id.,* T. 509, 511-12, 514-15]. Petitioner's fingerprints were not found on the gun. [*Id.,* T. 512].

Given the facts adduced at trial, Petitioner has not demonstrated that he is actually innocent of the offenses of conviction. His untimely habeas petition warrants no habeas corpus relief. *See e.g., Scott v. Duffy,* 372 F. App'x 61, 63-64 (11th Cir. 2010) (rejecting habeas petitioner's actual innocence claim where no showing made of factual innocence of aggravated assault underlying his probation

revocation and instead merely cited to evidence from probation revocation hearing and argued it did not support revocation of probation); *Bousley v. United States,* 523 U.S. 614, 623 (1998).

Under the totality of the circumstances present here, this federal petition should be dismissed as time-barred.

## VII. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. *See Chavez v. Sec'y, Fla. Dep't of Corr.,* 647 F.3d 1057, 1060 (11th Cir. 2011). To determine whether an evidentiary hearing is needed, the question is whether the alleged facts, when taken as true, are not refuted by the record and may entitle petitioner to relief. *Schriro v. Landrigan,* 550 U.S. 465, 474 (2007); *Jones v. Sec'y, Fla. Dep't of Corr.*, 834 F.3d 1299, 1318-19 (11th Cir. 2016). The pertinent facts of this case are fully developed in the record before this Court. Because this Court can "adequately assess [petitioner's] claim[s] without further factual development," *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing is not warranted.

## VIII. Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his § 2254 habeas corpus petition has no absolute entitlement to appeal, and to do so, must obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell,* 556 U.S. 180, 183 (2009) (citing *Slack v. McDaniel,* 529 U.S. 473, 484-85

(2000); *Wilkinson v. Dotson,* 544 U.S. 74, 78-83 (2005)). This Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Where a district court has rejected Petitioner's constitutional claims on the merits, Petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack,* 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, Petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Upon consideration of the record as a whole, this Court should deny a certificate of appealability. Notwithstanding, if Petitioner does not agree, he may bring this argument to the attention of the district judge in objections.

## IX. Conclusion

Based upon the foregoing, it is recommended that:

1.      the federal habeas petition be DISMISSED as time-barred;

2.      judgment be entered in favor of the respondent;

3.      a certificate of appealability be DENIED; and,

4.      the case CLOSED.

Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections

with the Clerk of this court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn,* 474 U.S. 140, 149 (1985); *Williams v. McNeil,* 557 F.3d 1287, 1291 (11th Cir. 2009)(finding district court has discretion to decline consideration of arguments not presented to the magistrate judge in the first instance).

Signed on this 6th day of March, 2020.

UNITED STATES MAGISTRATE JUDGE

cc:   Joseph Bradley, *Pro Se*
      DC#057749
      South Florida Reception Center-South Unit
      Inmate Mail/Parcels
      13910 NW 41st Street
      Doral, FL 33178

      Melanie Dale Surber, Ass't Atty Gen'l
      Florida Attorney General's Office
      1515 N Flagler Drive, 9th Floor
      West Palm Beach, FL 33401-3432
      Email: crimappwpb@myfloridalegal.com

- 22 -